IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE: | CASE NO. 19-04372 (MCF) |
| ANTONIO ORTIZ BETANCOURT | CHAPTER 7 |
| Debtor | |
| ROBERTO ROMAN AS THE CHAPTER 7 TRUSTEE OF THE BANKRUPTCY ESTATE OF ANTONIO ORTIZ BETANCOURT | ADVERSARY CASE NO. 19-00458 |
| Plaintiff, | |
| v. | |
| SAN CARLOS MORTGAGE, LLC; PLANET HOME LENDING, LLC | |
| Defendants | |

## **OPINION AND ORDER**

The Plaintiff, the chapter 7 trustee, seeks to invalidate a recorded mortgage lien that encumbers Debtor Antonio Ortiz Betancourt's residence on account of a defect in the mortgage deed. San Carlos Mortgage, LLC is the holder of the mortgage note that is secured by the lien and Planet Home Lending, LLC is the loan servicer (collectively referred to as "the Defendants"). The Defendants allege that the lien is correctly recorded and that this court cannot supplant the property registrar's role in

-1-

the recordation of titles.[1] The parties have moved for summary judgment and the court grant's the trustee's motion for the reasons below.

## I. UNDISPUTED FACTS AND PROCEDURAL HISTORY

On January 25, 2001, the Debtor acquired his home through a purchase sale, segregation, and liberation deed. Docket No. 128-2, Exhibit A. The home was purchased from a developer and the lot where Debtor's residence is located had to be segregated from the main property. His lot is identified as number 8 from Block T. The description in the Spanish language of this segregated lot is the following:

> RUSTICA: Solar radicado en la Urbanización Los Prados de Dorado, marcado con el Solar número ocho (8) del Bloque T, con un área superficial de dos mil trescientos cincuenta y dos punto ochenta y nueve metros cuadrados (2352.89 m.c.), en Linder por el NORTE, con el solar siete (7) la Calle Número Diez (10), en distancia de sesenta y uno punto cuarenta y dos metros (61.42); por el SUR, con la Puerto Rico Land Authority, en distancia de veintisiete punto sesenta y dos metros (26.62); por el ESTE, con la Iglesia Católica, en distancia de cincuenta y dos punto sesenta y seis metros (52.66) y por el OESTE, con el solar número nueve (9), en distancia de sesenta y uno punto cincuenta y cinco metros (61.55).

Docket No. 128-2 at 3-4, Exhibit A.[2]

At the time of purchase, the property did not exist in the property registry because it was being segregated from the matrix property. Docket No. 145 at 2. The property did not have a number assigned to it by the registrar at that time. Id.; Docket No. 128-2, Exhibit A.

To acquire this property, the Debtor sought a loan and on the same date of the purchase he signed a mortgage note and deed in favor of Santander Mortgage

---

[1] The original Defendants were Oriental Bank as the holder of the mortgage note, and Banco Santander as the loan servicer. Oriental and Santander filed the motions for summary judgment that the current Defendants argued before the court. Docket Nos. 139, 140, 144, 145, 146 & 148. The parties were substituted at Docket No. 214 after Claim No. 4 was transferred at Docket No. 96 in Case No. 19-04372.

[2] The English translation of the description is found at Docket No. 128-2 at 10-11, Exhibit A.

Corporation. Docket No. 128-2, Exhibit C. A review of the mortgage deed shows that the authorizing notary narrated that the description of the mortgaged property in the Spanish language was the following:

> RUSTICA: Parcela de terreno SCE guion ocho (SCE-8), de forma regular y topografía llana, ubicada en el Barrio Higuillar de Dorado, Puerto Rico. En lindes por el Norte, con la parcela GF guion uno (GF-1) de la finca Gerardo Fonalledas; por el Sur, con camino de la finca y la Carretera Estatal número seiscientos noventa y uno (691); por el Este, con la parcela SCE guion cinco (SCE-5) y por el Oeste, con el camino de la finca. Contiene un área de cinco punto uno cero ochenta y uno (5.1081), cuerdas, equivalentes a veinte mil cero setenta y seis punto ochocientos sesenta y seis metros cuadrados (20,076.66 m.c.), equivalentes a dos (2) hectáreas, seis (6) centiáreas y ochocientos sesenta y seis (866) miliáreas de centiáreas.
>
> Inscrita al folio número ciento ochenta y siete (187), del tomo número setenta y cinco (75) de Dorado, Registro de la Propiedad de Bayamón, Sección cuarta (4ta.), finca número tres mil doscientos diecinueve (3,219).
>
> Docket No. 128-2 at 34, Exhibit C.

The mortgage deed describes a different property from the one in the purchase deed. Id. The notary identified the Debtor's property as property number 3,219, even though it had not been assigned a number in the property registry yet. Id. The mortgage deed was presented for recordation on February 22, 2001, at 12:50 P.M., about a month after the Debtor's acquisition. Docket No. 189 at 18, Exhibit C1.

The property registrar recorded the sale deed on December 15, 2005, and the Debtor's home was assigned property number 12,229. Docket Nos. 128-2 at 15; 145 at 2; and 191-1 at 1. For almost two decades, the mortgage deed remained unrecorded until February 18, 2020. Docket No. 189 at 18-19, Exhibit C1.

About a month before the filing of the bankruptcy petition, in an effort to get the mortgage deed registered, Banco Santander, the Defendants' predecessor, executed

-3-

a rectification and ratification deed acknowledging that a different property was pledged in the pending mortgage deed and corrected the description of Debtor's property. Docket No. 172. The notary that authorized the rectification and ratification deed is different from the notary that authorized the mortgage deed. Id. at 4. This new notary immediately refiled the mortgage deed accompanied with the rectification and ratification deed as a complementary document at the property registry. Docket No. 189 at 22, Exhibit D1. The property registrar later requested that these documents be withdrawn for reasons which will be explained subsequently.

On July 31, 2019, the Debtor filed a voluntary petition under chapter 13. Case No. 19-04372 at Docket No. 1. At the time of the bankruptcy filing, the mortgage deed had two presentation entries, 233-151-BY04 from the year 2001 (a month after the Debtor acquired the property) and 2019-064577-BY04 from the year 2019 (with the rectification and ratification deed attached). Adv. Proc. 19-00458, Docket Nos. 189 at 18, Exhibit C1; and 145-5 at 1. Neither had been recorded in the property registry at the time of the filing of the petition. Docket No. 189 at 18-19, Exhibit C1.

On February 18, 2020, during the pendency of the bankruptcy proceedings, the property registrar recorded the mortgage deed over the Debtor's residence presented in 2001 at entry 233-151-BY04, nineteen years after its presentation. Id. at 19. The recordation lists as observations and conditions that it was "[r]egistered under the provisions of Law 216 of 2011 to Expedite the Registry of Property."[3] Docket No. 228-1 at 1. The registry further reflects that no complementary documents were used in passing judgment over the mortgage deed and its subsequent recordation. Id.

Four months later, the registrar asked that presentation of the second copy of the mortgage deed and its accompanying rectification and ratification deed 2019-

---

[3] Act 216 of 2011 is a law that regulates housing and does not pertain to the property registry. We believe that the year of the act is a typographical error, and the correct statute is Act 216 of 2010 which deals with expedited recordation of certain titles at the property registry.

064577-BY04 be withdrawn from the property registry because (1) the same mortgage deed had already been presented in the year 2001 and (2) that it had already been recorded. Docket No. 189 at 25, Exhibit E1.

The property registry currently shows three recordings over the Debtor's residence in the following order: 1) his title ownership; 2) the mortgage deed; and 3) the homestead protection. Docket Nos. 128-2 at 15, Exhibit B & Docket No. 228-1. The bankruptcy case was converted to chapter 7 on June 25, 2020. Case No. 19-04372 at Docket No. 49.

## II.    DISPUTED ISSUE

The parties dispute whether the recorded mortgage deed constitutes a valid lien over the Debtor's real property because the deed describes another property. The trustee claims that the defective property description is fatal to the constitution of the mortgage. The defendants contend that the registrar's recordation of the mortgage made it a validly constituted lien under Puerto Rico law. They also believe that given the Debtor's admission that his intent was to mortgage his home, the recordation in the property registry is correct.

## III.    SUMMARY JUDGMENT STANDARD

Under Fed. R. Civ. P. 56, made applicable in bankruptcy by Fed. R. Bankr. P. 7056, a summary judgment is available if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); Borges v. Serrano-Isern, 605 F.3d 1, 4 (1st Cir. 2010). Summary judgment is appropriate for piercing the pleadings and assessing the proof to determine whether a trial is required. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). It is proper to enter summary

-5-

judgment when the movant shows that there are no genuine disputes of material fact and consequently the movant is entitled to judgment as a matter of law. Id. at 322; Policastro v. Northwest Airlines, Inc., 297 F.3d 535, 538 (6th Cir. 2002). When both parties move for summary judgment, each party must carry its own burden of proof as the moving party in its cross-motions and as the nonmoving party in response to the other party's motion. Wells Real Estate Inv. Trust II, Inc. v. Chardon, 615 F.3d 45, 51 (1st Cir. 2010). If there are no disputed material facts, only one party is entitled to judgment as a matter of law. Encanto Rests., Inc. v. Aquino Vidal (In re Cousins Int'l Food Corp.), 553 B.R. 197, 205 (Bankr. D.P.R. 2016). This matter is appropriate for summary judgment disposition as there are no material facts in dispute and it is a matter of law. Canzano v. Ragosa (In re Colarusso), 382 F.3d 51 (1st Cir. 2004) (citing Celotex, 477 U.S. at 322-323)); Vega-Rodriguez v. Puerto Rico Tel. Co., 110 F.3d 174, 178 (1st Cir. 1997).

## IV.   LEGAL ANALYSIS

To determine whether the recorded mortgage constitutes a valid lien over the Debtor's property, the Puerto Rico Civil Code imposes essential requirements for a mortgage to exist: 1) constituted to fulfill a principal obligation; 2) the property is owned by the person who mortgages it; 3) that the mortgagor has free disposition of the property; and 4) the deed must be presented and recorded in the property registry. 31 L.P.R.A. §§ 8671-8673, 8731 & 8734.[4] These requirements have remained unaltered since the approval of the Puerto Rico Civil Code of 1930, which was replaced by the Puerto Rico Civil Code of 2020. A mortgage encumbers real property with the objective of guaranteeing a contractual obligation and it is also considered a real property right. 31 L.P.R.A. § 8731.[5] Puerto Rico's civil law

---

[4] Articles 1756 & 1774 of the Puerto Rico Civil Code of 1930 were in effect when the Debtor executed the mortgage deed. 31 L.P.R.A. §§ 5001 & 5042 (repealed).

[5] Article 1775 of the Puerto Rico Civil Code of 1930 was in effect when the Debtor executed the mortgage deed. 31 L.P.R.A. § 5043 (repealed).

tradition has always maintained that a mortgage is of constitutive nature, meaning that for it to arise, it must be recorded in the property registry. 31 L.P.R.A. § 8734.[6]

The property registry is governed by the Puerto Rico Property Registry Act of 2015, which repealed the Puerto Rico Mortgage Act of 1979. 30 L.P.R.A. §§ 6001-6561.[7] The purpose of the property registry is to give publicity to the status of title ownership of real property. 30 L.P.R.A. §§ 6001-6002.[8] The information in the registry is public and may be consulted by any person interested in learning about the title ownership of real property and any lien or encumbrance that may be attached to it. 30 L.P.R.A. § 6003.[9]

A mortgage must be expressed in a public deed and subsequently presented and recorded in the property registry for it to exist. 30 L.P.R.A. § 6011.[10] The public deeds presented and recorded in the property registry are regarded as "titles" by the Property Registry Act. Id. A mortgage deed is a "title" because it is expressed in the form of a public deed. Any person with interest in a title can request its recordation. 30 L.P.R.A. § 6031.[11] Once a title is presented to the property registry, the registrar shall perform the following entries: 1) presentation; 2) recordation; 3) preventive annotations; 4) cancelations; and/or 5) notes. 30 L.P.R.A. § 6035.[12] These actions are known as the registrar's qualification of documents. 30 L.P.R.A. §§ 6381-6382.[13] Qualification is the passing of judgment over the presented titles.

The act of qualifying a document that seeks entry into the property registry is the embodiment of the principle of legality, which requires "that only valid and

---

[6] Article 1774 of the Puerto Rico Civil Code of 1930 was in effect when the Debtor executed the mortgage deed. 31 L.P.R.A. § 5042 (repealed).

[7] The Puerto Rico Mortgage Act of 1979 was in effect when the Debtor executed the mortgage deed. 30 L.P.R.A. §§ 2001-2821 (repealed).

[8] 30 L.P.R.A. §§ 2051 & 2351 (repealed).

[9] 30 L.P.R.A. § 2101 (repealed).

[10] 30 L.P.R.A. § 2201 (repealed).

[11] 30 L.P.R.A. § 2251 (repealed).

[12] 30 L.P.R.A. § 2301 (repealed).

[13] 30 L.P.R.A. §§ 2267 & 2270 (repealed).

perfect titles gain access to the [r]egistry." U.S.I. Properties, Inc. v. Registrador, 1989 P.R. Sup. LEXIS 142, 124 D.P.R. 448, 465 (1989). This principle is of such importance that when the Puerto Rico Legislative Assembly proposed a temporary fast track of title recordation, Professor Luis Rivera, a leading scholar of Puerto Rico mortgage law, warned that the legislation would wipe out both the notion that only perfect titles enter the registry and the public faith of the registrar's recordation which is the registry's ultimate purpose. Luis R. Rivera, Derecho Registral Inmobiliario Puertorriqueño, 274 (3rd ed. 2012). According to the professor, if a title were to be recorded under a fast-track process, the principle of legality would be compromised, and the property registry would become a mere storage of titles. Id. The legislative bill was eventually approved and became Act 216 of 2010, which provided for the automatic recording of certain titles presented on or before April 30, 2010, due to the backlog of unrecorded titles in the property registry. 30 L.P.R.A. §§ 1821-1831. Any recordation under this law is to be identified by the registrar as such. 30 L.P.R.A. § 1822. This law did not alter the principle of legality because it did "not invalidate or leave without effect the general principles that encompass the system of the Registry and Puerto Rico mortgage law." Ramos v. Banco Popular (In re Ramos), 493 B.R. 355, 367-68 (Bankr. D.P.R. 2013). The Puerto Rico Supreme Court has cited this court's case acknowledging that a recordation under Act 216 must comply with the principles of mortgage law. DLJ Mortgage Capital, Inc. v. Garcia Ramos, 207 D.P.R. 28 (2021).

The Property Registry Act contemplates situations in which an entry can be defective. 30 L.P.R.A. § 6048.[14] In doing so, the Property Registry Act states that an entry is defective if it omits or substantially misrepresents a circumstance that arises from the title that motivated the recordation. Id. Notwithstanding, it is presumed that the entries published in the registry belong to the title owner in the manner that the

---

[14] 30 L.P.R.A. § 2321 (repealed).

entry expresses it. 30 L.P.R.A. § 6049.[15] Courts must give deference to the registry's recognition of title ownership while the corresponding ordinary procedures to correct the registry's defects are exhausted. Id.

In explaining the presumption of validity, the Puerto Rico Supreme Court has expressed that the registrar does not validate acts or void contracts, nor does he adjudicate rights, because these matters are for judicial review only. United Surety v. Registrador, 192 D.P.R. 187, n.7 (2015)(citing Cabrer v. Registrador, 13 P.R. Offic. Trans. 549, 113 D.P.R. 424 (1982)). The same court has also stated that a party that alleges that a registered contract in the property registry is void, must challenge it judicially. Perez Rivera v. Registradora, 189 D.P.R. 729, 735 (2013)(citing Consejo Tit. C. Parkside v. MGIC Fin. Corp., 1991 P.R. Sup. LEXIS 239, 128 D.P.R. 538 (1991)). The rule of law that emanates from a recordation can only be altered by a judicial order. Id.

In the instant case, San Carlos Mortgage is the owner of the challenged recorded lien because it is the holder of the mortgage note that is guaranteed by the mortgage. It is undisputed that the mortgage is recorded in the property registry as the second recordation over the Debtor's residence and as such it has been constituted under Puerto Rico law. A third party that wishes to view the legal status of the Debtor's residence may see that it is encumbered by a mortgage lien. However, under Puerto Rico law, a recordation's validity may be challenged. The trustee is rebutting the validity of the recordation of the mortgage deed in this judicial proceeding. This court has jurisdiction to resolve this dispute under 28 U.S.C. § 157(b)(2).

Upon examining the mortgage deed, we find that that there are three defects that violate the legal requirement that the mortgagor own the property being mortgaged. 31 L.P.R.A. §§ 8672 & 8731. First, the property that is being described

---

[15] 30 L.P.R.A. § 2354 (repealed).

in the mortgage deed does not belong to the Debtor nor is it the same as the one described in the sale deed signed by the Debtor. Second, the property that is described in the mortgage deed (Lot No. 3,219) has a different lot number than the Debtor's property (Lot No. 12,229). Finally, the lot owned by the Debtor contains a marginal note by the property registrar explaining that it proceeds from Lot No. 12,195, a different property from the one described in the mortgage deed. Docket No. 191-1 at 1.

Since the mortgage was recorded under Act 216 of 2010, the trustee may challenge its validity for the three defects previously mentioned. A recordation under Act 216 is presumed to be valid but can be rebutted. Ramos, 493 B.R. at 368; 30 L.P.R.A. § 1826. A review of the exhibit called "Karibe Page" shows that the mortgage deed was recorded pursuant to Act 216 of 201[0] and that no complementary documents were presented to aid the registrar in passing judgment over the deed.[16] Docket No. 228-1 at 1. Act 216 required the property registrars to identify the deeds recorded under this law. 30 L.P.R.A. § 1822. The exhibit demonstrates that the property registrar did not pass judgment over the mortgage deed that had been pending for nineteen years because its recordation was fast-tracked under Act 216. This court has previously ruled that while a deed is recorded under Act 216 it may be challenged for failure to comply with the legal requirements to be properly recorded. Ramos, 493 B.R. at 367. In Ramos, the court declared a recorded mortgage under Act 216 of 2010 to be defective because it lacked a chain of title. Id. at 368. Similarly, we find this expedited recordation to be defective because the mortgage deed does not comply with the principle of legality.

---

[16] "Karibe Page" is a website of the Commonwealth of Puerto Rico that carries out the function of displaying the digital format of the property registry. 30 L.P.R.A. § 6001. The mortgage's entry states in the "Observations/Conditions" section, "[r]egistered under the provisions of Law 216 of 2011 to Expedite the Registry of Property." Docket No. 228-1. The "Complementary Documents" section states "[n]one." Id. Complementary documents are documents that aid the registrar in passing judgment over a title presented at the property registry. 30 L.P.R.A. § 6381.

-10-

Even if the mortgage deed was not recorded under Act 216 of 2010, the Defendants argue that the mortgage's recordation is correct because it complies with Debtor's intent to mortgage his home. We disagree because, regardless of the Debtor's intention, the documents presented for recordation at the property registry must comply with the principle of legality. Voidable defects, obstacles originating from the property registry, and failure to present complementary documents provide the registrar with cause to deny the recordation. 30 L.P.R.A. § 6387.[17] Recordation should have been denied here because the mortgage deed does not comply with the principle of legality. Further documentation was needed to properly qualify the mortgage deed. By recording the 2001 presentation, the registrar opened the registry to an incomplete title. Only perfect titles should gain access to the property registry. U.S.I. Properties, Inc., 1989 P.R. Sup. LEXIS 142. Holding otherwise would convert the property registry into a mere storage of titles and the public faith in the recorded documents would be lessened.

We further stress that the property registrar does not "declare the existence or inexistence of a doubtful title." Cabassa v. Registrador, 16 P.R. Offic. Trans. 1061, 1065 (1986). "[T]he [r]egistrar must abide by the contents of the documents filed and the state of law created by previous entries." Id. at 1064. Under Puerto Rico law, the registrar is not a judge, and only in the judicial branch can the entries of the registry be questioned. Id. at 1064-65. In the present case, had the registrar taken into consideration the property description in the mortgage deed and the previous entry of recordation of the purchase sale, segregation and liberation deed, the mortgage would not have been recorded. The description of the Debtor's property in the registry is inconsistent with the description in the mortgage deed. It was necessary to present a rectification deed that complied with the Puerto Rico Notarial Act to address the mortgage deed's deficiencies as discussed above. No reference is

---

[17] 30 L.P.R.A. § 2271 (repealed).

made in lot 12,229 about the registrar taking notice of a rectification deed. A registrar cannot "evaluate the legality of the judgments or entries made by themselves or by their predecessors." Id. at 1065. Once the Debtor's "purchase sale, segregation and liberation deed" had been recorded, the registrar was bound to respect its description as recorded. Consequently, we find that the mortgage deed recorded over the Debtor's property was improperly recorded.

We note that the Defendants' predecessors knew that the mortgage deed pledged the wrong property and they tried to cure the defect. A month before the filing of the petition, Banco Santander Puerto Rico executed a rectification and ratification deed acknowledging that a different property was pledged and offering the description of the Debtor's property to cure the defect. Docket No. 172. In the deed, Banco Santander asked the property registrar to take notice of the error when passing judgment over the pending mortgage deed.[18] Id. at 8.

Under Puerto Rico's notarial law, this is not the proper way to correct the mortgage deed's defect. Both parties (the mortgagor and the mortgagee) must appear in the public document expressing the error and giving consent to its correction. 4 L.P.R.A. § 2047. The other two options offered by the Puerto Rico Notarial Act to correct the deed are to have the original notary who authorized the mortgage deed express in a separate deed the mistake and offer the correct facts to cure the defect, or to make the correction through a court judgment. Id. Banco Santander's deed does not comply with any of the remedies contemplated in the Notarial Act because the Debtor does not appear as a signatory and the notary that authorized the latest document is not the same as the one on the mortgage deed. Because the notarial law expresses specific and strict requirements to correct deeds, the Defendants failed to correct the defects prior to the bankruptcy filing and the property registrar was

---

[18] The registrar did not pass judgment over the rectification deed because he ordered its withdrawal along with the second copy of the mortgage deed that it was accompanying to achieve recordation. Docket No. 189 at 25, Exhibit E1.

without legal authority to record the defective deed. Consequently, the presentations in 2001 and 2019, of the same mortgage deed, were both subject to being rejected by the property registrar.

## V. CONCLUSION

The court grants the Plaintiff's motion for summary judgment (Docket No. 128). The mortgage deed did not create a valid lien or security interest over the Debtor's real property and San Carlos Mortgage, LLC now holds a general unsecured claim in the bankruptcy proceeding. The oppositions to the summary judgment and cross-motion for summary judgment filed by the Defendants (Docket Nos. 139 & 148) are denied.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 20th day of July, 2023.

MILDRED CABAN FLORES
United States Bankruptcy Judge

-13-